OPINION
{¶ 1} This is an appeal in which appellant, Dallis Jones, appeals the decision of the Butler County Common Pleas Court, Juvenile Division, to terminate his parental rights and grant permanent custody of his son to Butler County Children Services Board ("BCCSB").
 {¶ 2} Appellant's son, Isaiah Cleckley a.k.a. Isaac Cleckley, was born prematurely on January 23, 2000, weighing one pound and one-half ounce. Isaiah's mother, Margaret Cleckley ("Cleckley"), had a history of chemical dependency and was incarcerated at the time of Isaiah's birth. Cleckley tested positive for drugs days before Isaiah's birth and when Cleckley was admitted for the delivery.
 {¶ 3} Isaiah had numerous medical needs that required continuing care. He spent the first three months of his life hospitalized at Children's Hospital Medical Center in Cincinnati ("Children's Hospital"). Isaiah still has medical needs that require trained caregivers and daily skilled nursing.
 {¶ 4} BCCSB was involved with the family prior to Isaiah's birth because Isaiah's two siblings were left with appellant's mother. At the time of Isaiah's release from the hospital, Cleckley was still in jail and the whereabouts of appellant, who was the alleged father, were unknown. Neither appellant nor Cleckley had seen Isaiah.
 {¶ 5} Isaiah was found to be an abused, neglected, and dependent child on July 27, 2000. BCCSB filed a motion for permanent custody. Hearings on said motion were held on July 3, 2001 and February 21, 2002.[1] Permanent custody of Isaiah was granted to BCCSB and appellant's parental rights were terminated by entry filed April 12, 2002.
 {¶ 6} Appellant appeals, arguing that the decision to grant permanent custody was not supported by clear and convincing evidence because the best interest of the child would be served by granting custody to him.
 {¶ 7} When a state agency moves for permanent custody, the trial court is required, in part, to determine "if it is in the best interest of the child to permanently terminate parental rights and grant permanent custody to the agency that filed the motion." R.C. 2151.414(A)(1). In making this best interest determination, the trial court must consider all relevant factors, including but not limited to the factors enumerated in R.C. 2151.414(D).
 {¶ 8} Upon examination of the record, we find that the trial court's determination that it was in the best interest of Isaiah to be permanently placed in the custody of BCCSB is supported by clear and convincing evidence. The trial court outlined the required factors and applied the evidence in its consideration of the motion for permanent custody.
 {¶ 9} The trial court found that Isaiah had been in the custody of BCCSB for more than twelve months of the last 22 months. In fact, Isaiah, who was 25 months old at the hearing, had been in BCCSB's custody for the last 21 months.
 {¶ 10} The trial court noted that appellant was incarcerated and had not seen Isaiah since his birth. Conversely, the trial court found that Isaiah was bonded with his foster family, with whom he had been placed since August 2000. The foster family received extensive medical training while Isaiah was hospitalized and could attend to Isaiah's complicated medical needs and numerous medical appointments. The foster parents had expressed an interest in adopting Isaiah.[2]
 {¶ 11} The trial court found that appellant was not aware of Isaiah's medical problems and had not received any training for them. The trial court noted that appellant had not sought out information about Isaiah or his condition since paternity was formally established in autumn of 2001.
 {¶ 12} The trial court stated, "Isaiah requires a legally secure, stable environment in which he can improve his physical condition and continue to develop without placing him at further risk. This court does not believe that such a placement exists at this time, or will be available in a reasonable amount of time, outside of a grant of permanent custody."
 {¶ 13} After finding that permanent custody would be in the best interest of Isaiah, the trial court also found that Isaiah's placement in the temporary custody of BCCSB for approximately 21 months permitted it to grant BCCSB's motion for permanent custody. The trial court further found that BCCSB had made reasonable efforts to prevent the need for Isaiah's removal from his parents and that Isaiah could not and should not be placed with his father.
 {¶ 14} The trial court noted that appellant's mother had legal custody of Isaiah's two siblings. Appellant had not cared for or financially supported those siblings and may have visited them only when his mother "ran into him," every two or three months.
 {¶ 15} Appellant did not participate in services outlined in the case plans filed in the siblings' cases. The trial court noted, "This lack of consistency and commitment to his other children is of concern in a case where consistency and commitment are essential to this child's health and well-being."
 {¶ 16} We find that clear and convincing evidence supports the trial court's finding that placement of Isaiah in the permanent custody of BCCSB was in his best interest and met the criteria set forth in R.C.2151.414. The trial court did not abuse its discretion. See In re WilliamS., 75 Ohio St.3d 95, 1996-Ohio-182.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] The trial court granted permanent custody to BCCSB and terminated Cleckley's parental rights by decision and entry issued after the July 3, 2001 hearing. BCCSB secured service on appellant by legal advertisement for the July 3 hearing. Subsequent DNA testing revealed that appellant was Isaiah's father and appellant was permitted to participate in a permanent custody hearing on February 21, 2002. Cleckley is not a party to the instant appeal.
[2] Isaiah's guardian ad litem ("GAL") recommended that permanent custody be granted to BCCSB.